UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| KEVIN EDWARD MOYER, | ) | Case No. 21-50489 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| JOHN P. FITZGERALD, III, | ) | |
| Acting United States Trustee For Region Four, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | Case No._____ |
| | ) | |
| KEVIN EDWARD MOYER, | ) | |
| | ) | |
| _____Defendant._____ | ) | |

**COMPLAINT TO DENY DISCHARGE**

Comes now John P. Fitzgerald, III, Acting United States Trustee for Region Four (the

"**United States Trustee**"), and moves the Court pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4) to

deny a discharge to Kevin Edward Moyer (the "**Defendant**").  In the face of years long collection

efforts by creditors including one to whom the Defendant owed more than $1,000,000.00, the

Defendant: transferred or concealed, or permitted to be transferred or concealed, property outside

the year prior to his petition date and continuously concealed to the present his retention of a

beneficial or equitable interest in such property with intent to hinder, delay, or defraud his creditors

or his chapter 7 trustee; concealed property of the estate with intent to hinder, delay, or defraud

creditors or his chapter 7 trustee; and knowingly and fraudulently or with or with reckless disregard

to the truth made numerous false oaths in connection with his bankruptcy case to, for example,

further the concealment of assets.  In support of this complaint, the United States Trustee

respectfully states as follows:

## Jurisdiction And Venue

1.      On September 15, 2021, the Defendant, a resident of Page County, Virginia, commenced case number 21-50489 by filing a voluntary petition for relief in this Court under chapter 7 of the Bankruptcy Code.  The Defendant's case is still pending before this Court.

2.      Plaintiff is the United States Trustee, and he is a United States Department of Justice official authorized to file this timely-filed complaint objecting to the Defendant receiving a discharge.

3.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334, and the statutory predicates for this complaint are 11 U.S.C. §§ 105, 307, and 727.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The United States Trustee consents to the Court's entry of a final order in this matter.

## Background

***General Information About the Defendant Leading Up to the Filing of this Case***

6.      The Defendant is not unsophisticated.  He has a long history of owning and operating businesses, he is a member of the Board of Zoning Appeals for Page County, Virginia, and he is the president of the Luray Young Farmers Association, Inc.

7.      The Defendant is also not unfamiliar or unsophisticated with respect to bankruptcy.

8.      On or about July 11, 2001, the Defendant and his brother, Allen T. Moyer, II, took title to the following parcel of real estate located in Page County, Virginia: tax map number 74-A-109, which is a 5.206 acres parcel currently having a tax assessed value of $31,200.00 (the "**Subsequently Disclosed Parcel**").

2

9.      On or about June 30, 2005, articles of organization were filed for Heritage Land Investments, LLC.   As of August 31, 2011, the Defendant owned 100% of Heritage Land Investments, LLC, and it owned approximately 57 acres of land.

10.      On or about January 19, 2006, the Defendant caused articles of incorporation to be filed for Moyer Brothers Contracting, Inc. ("**Contracting**").   According to online records of the Virginia Department of Professional and Occupational Regulation, Contracting had specialties in Equipment/Machinery (EMC) and Landscape Services (LSC) and its license expired on March 31, 2019.   Prior to its automatic termination by the Virginia State Corporation Commission on May 31, 2020, the Defendant owned 100% of Contracting and served as its president, secretary, and treasurer.

11.      On or about August 24, 2006, the Defendant and his brother, Allen T. Moyer, II, took title to the following parcel of real estate located in Page County: tax map number 74-A-114B, which is a 10.9 acres parcel currently having a tax assessed value of $54,500.00 (the Subsequently Disclosed Parcel and tax map number 74-A-114B will hereinafter be collectively referred to as the "**Jointly Owned Parcels**").

12.      The Property Identification Cards maintained by the Commission of Revenue for Page County, Virginia for the Jointly Owned Parcels are attached as <u>Exhibit 1</u>.

13.      The Property Identification Card maintained by the Commission of Revenue for Page County, Virginia for the Subsequently Disclosed Parcel indicates that the tax assessments for the parcel are sent to the Defendant's residence located at 467 Somers Road, Luray, Virginia (the "**Residence**").   The Property Identification Card maintained by the Commission of Revenue for Page County, Virginia for the tax map number 74-A-114B shows that the tax assessments for that parcel are sent to 1752 Ida Road, Luray, Virginia.

14.     The current combined tax assessed value of the Jointly Owned Parcels is $85,700.00.

15.     On or about March 22, 2007, the Defendant caused articles of incorporation to be filed for Valley Wood Products, Inc.  As of August 31, 2011, Defendant owned 100% of Valley Wood Products, Inc.

16.     On or about April 14, 2009, the Defendant caused articles of organization to be filed for NAAC, LLC.

17.     On or about June 5, 2009, the Defendant caused NAAC, LLC to file articles of amendment changing its name to Edinburg Investments, LLC (“**Edinburg Investments**”).  As of August 31, 2011, the Defendant owned 100% of Edinburg Investments and it owned, among other things, 142 acres of land.

18.     In addition to his interests in the Jointly Owned Parcels, by deed recorded on May 14, 2009, the Defendant has a 1/16th remainder interest in the following real estate located in Page County: tax map number 74-A-70, which is a 150.125 acres parcel having a current tax assessed value of $300,300.00; tax map number 74-A-72, which is a 494.4 acres parcel having a current tax assessed value of $1,447,700.00; tax map number 74-A-102, which is a 22.5 acres parcel having a current tax assessed value of $157,900.00; tax map number 74-A-104, which is a 48.769 acres parcel having a current tax assessed value of $208,200.00; and tax map number 74-A-108, which is a 36.325 acres parcel having a current tax assessed value of $153,300.00 (tax map numbers 74-A-70, 74-A-72, 74-A-102, 74-A-104, and 74-A-108 will hereinafter be collectively referred to as the “**Mountain Farm Parcels**”).

19.     The current combined tax assessed value of the Mountain Farm Parcels is $2,267,400.00.

20.     A copy of the deed granting the Defendant a remainder interest in the Mountain Farm Parcels is attached as Exhibit 2.

21.     The Property Identification Cards maintained by the Commission of Revenue for Page County, Virginia for the Mountain Farm Parcels are attached as Exhibit 3.

22.     The Property Identification Cards maintained by the Commission of Revenue for Page County, Virginia for the Mountain Farm Parcels indicate that the tax assessments for the Mountain Farm Parcels are sent to the Defendant at the Residence.

23.     Tax map number 74-A-114B, which the Defendant jointly owns with his brother, is not mapped by the Page County, Virginia GIS.  However, based on the locations of 74-A-114, 74-A-114A, and 74-A-114C, it appears likely that the property designated by tax map number 74-A-114B adjoins, or is very close to, 74-A-109.  A copy of Page County Tax Map 74 showing the locations of the Jointly Owned Parcels and the Mountain Farm Parcels is attached as Exhibit 4.

24.     All of the Mountain Farm Parcels adjoin each other, and the Subsequently Disclosed Parcel adjoins tax map number 74-A-108 (i.e. at least one of the Jointly Owned Parcels adjoins the Mountain Farm Parcels).

25.     Between January 23, 2009, and July 6, 2009, Valley Wood Products, Inc. borrowed a total of $1,804,500.00 from Farmers and Merchants Bank ("**F&M Bank**").  The loans to Valley Wood Products, Inc. were secured by: the property described in the deed of trust recorded in Page County as instrument number 090000202; liens on certain equipment, vehicles, and trailers owned by either the Defendant or entities owned by the Defendant; and the property described in the deed of trust recorded in Shenandoah County, Virginia in Deed Book 1462, pages 535-544.

26.     On July 6, 2009, Edinburg Investments borrowed $2,500,000.00 from F&M Bank to acquire the former Johns-Manville plant in Shenandoah County, Virginia.  To secure the loan,

the Defendant, his mother and father (Allen T. Moyer and Barbara H. Moyer), his brother (Allen T. Moyer, II), Heritage Land Investments, LLC, and Edinburg Investments granted F&M Bank a lien on hundreds of acres of land as more particularly described in the deed of trust recorded in Shenandoah County Deed Book 1458, pages 556-566.

27.     The Defendant guaranteed the loans referenced in paragraphs 25 and 26.

28.     On or about June 28, 2010, the Defendant purchased, among other things, a Caterpillar 953C Track Loader (the "**Track Loader**").  Caterpillar Financial Services Corporation ("**CFSC**") financed the purchase of the Track Loader.

29.     The Defendant caused Edinburg Investments to acquire the former Johns-Manville plant in July 2009 so that Valley Wood Products, Inc., which had been in the sawdust business, could move there and manufacture wood pellets.  The business plan, however, fell apart and F&M Bank began collection activities.

30.     On August 15, 2011, Edinburg Investments filed a petition for relief in this Court under chapter 11 of the Bankruptcy Code, which petition commenced case number 11-51167.  The Defendant owned the membership interest in Edinburg Investments and served as the company's representative during the pendency of the case.  The Defendant caused Edinburg Investments to file bankruptcy to stop a foreclosure sale scheduled by F&M Bank.

31.     On its Schedule D, Edinburg Investments disclosed that F&M Bank held a claim in the amount of $4,552,268.00.

32.     On its Schedule H, Edinburg Investments disclosed that codebtors on the debt to F&M Bank included the Defendant and certain of Defendant's family members.

33.     On August 31, 2011, the Defendant filed a petition for relief in this Court under chapter 13 of the Bankruptcy Code, which petition commenced case number 11-52151 (the "**2011**

Case"). At that time, the Defendant owed arrearages totaling more than $100,000.00 to the senior

lender secured by the Residence.

34. On the Schedule A filed in the 2011 Case, the Defendant disclosed his interests in

the following real estate:

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 467 Somers Road  residence and 3 acres | | | 564,000.00 | 1,300,000.00 |
| 6.981 acre parcel Page County Virginia | | | 74,100.00 | 4,600,000.00 |

At the time he filed the 2011 Case, the Defendant resided in the Residence.

35. On the Schedule B filed in the 2011 Case, the Defendant disclosed:

| | | |
|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | debtor has 100% interest in Edinberg Investments LLC which is currently involved in a chapter 11 case this LLC owns 142 acres and a commerical building debtor beliieves  this to be worth 11 million,  property is subject to a loan of Farmers and Merchant bank for 4.6 million  and also owes back real estate taxes of $63,000 | 11,000,000.00 |
| | debtor holds 100% interest in  Valley Wood Products this LLC owns accounts receiviables with value of approx 30,000 and a bank account at Farmers and Merchant bank with  $500 in it | 30,500.00 |
| | Debtor owns 100% interest in  Heritage Land Investments which owns 57 acres valued at 740,000 but this property is also subject to a lien held by Farmers and Merchant Bank for a 4,6 million loan | unknown |
| | debtor owns 100% interest in Moyers Poultry Farms  whixh s a sub chapter s corp, it operates a chicken house on real estate belonging to Debtor | unknown |
| | Debtor owns 100% of Moyer Brothers LLC which owns a bank account with $500 in it at BB and T bank | 500.00 |

36. On the Schedule D filed in the 2011 Case, the Defendant disclosed, among other

things,:

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED. NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. Caterpillar Financial Corporation PO Box 905561 Charlotte, NC  28290-5561 | | | tigar cat | X | | | 37,000.00 | |
| | | | VALUE $  65,000.00 | | | | | |
| ACCOUNT NO. Farmers And Merchants Bank 205 S. Main Street Timberville, VA  22853 | | | debt secured by various real estate belonging to Debtor and real estate owened certain LLC's which the Debtor owns | X | | | 4,600,000.00 | 4,525,900.00 |
| | | | VALUE $  74,100.00 | | | | | |

7

37.     On the schedules filed in connection with the 2011 Case, the Defendant disclosed that "Saxon Mortgage" held a first lien deed of trust on the Residence. Upon information and belief, at that time, the investment bank and financial services entity commonly known as Morgan Stanley owned "Saxon Mortgage."

38.     With regard to the Track Loader, CFSC filed proof of claim number 16 the 2011 Case and copies of that proof of claim as well as the financing and continuation statements filed by CFSC with the Virginia State Corporation Commission are attached as <u>Exhibits 5</u> and <u>6</u>, respectively.[1]

39.     On April 13, 2012, the Court dismissed the 2011 Case.

40.     During the pendency of its case, F&M Bank foreclosed on Edinburg Investment's real estate. After the foreclosure sale, Edinburg Investments moved to dismiss its case and on January 24, 2013, this Court converted Edinburg Investments' case to one under chapter 7 of the Bankruptcy Code. The case closed on April 3, 2013.

41.     Subsequently, it appears the senior lender secured by the Residence took title to the Residence. Online records of the Page County, Virginia Commissioner of the Revenue indicate that FV-1 Inc., in trust for Morgan Stanly, took title to the Residence on or about May 3, 2013. Shortly thereafter, on May 22, 2013, articles of organization were filed for an entity named Shavings, LLC.

42.     Upon information and belief, at the time FV-1 Inc., in trust for Morgan Stanley, took title to the Residence, the Defendant lived there with his significant other, Annette Lee Griffith ("**Ms. Griffith**").

---

[1] Records available online from the Virginia Courts Case Information website for the Circuit Court of Page County, Virginia show that CFSC filed a complaint against Defendant on March 2, 2015. The action was dismissed on June 8, 2016.

43.     Records available online from the Virginia Courts Case Information website for the General District Court for Page County, Virginia show that FV-1, in trust for Morgan Stanley, filed an unlawful detainer against the Defendant on May 17, 2013, and the court awarded possession on July 12, 2013.

44.     Online records of the Page County, Virginia Commissioner of the Revenue indicate that Shavings, LLC took title to the Residence on or about August 2, 2013.

45.     According to the Defendant, Ms. Griffith is the owner of Shavings, LLC.

46.     On December 15, 2014, articles of organization were filed for BioFuels Energy Consultants LLC ("**BioFuels**").

47.     Between December 2012 and November 2019, much, if not all, of F&M Bank's collateral was sold or otherwise transferred. As previously indicated, F&M Bank foreclosed on the Johns-Manville plant in December 2012. And between 2018 and 2019, most of the 17 parcels in Page County described in the deed of trust recorded in Shenandoah County in Deed Book 1458, pages 556-566 were sold or otherwise transferred. For example, online records for Page County, Virginia indicate that the Defendant owned tax map number 74-A-76 and he transferred it David Wayne Shenk, Lynette Moyer Shenk, and Samantha Lee Shenk for $0.00 on February 22, 2018. Online records for Page County, Virginia indicate that the Defendant and Allen T. Moyer, II jointly owned tax map numbers 53-A-41, 53-A-45, and 53-A-48 (the "**Transferred Parcels**") and they sold the Transferred Parcels to Gary L. Cubbage on October 1, 2019, for $585,000.00.[2] Online records for Page County, Virginia further indicate that the Defendant, Allen T. Moyer, II, Allen T. Moyer, and Barbara H. Moyer jointly owned tax map number 52-A-83 and they sold the parcel to

_____

[2] Online records further indicate that on November 16, 2020, Gary L. Cubbage transferred the Transferred Parcels to Garrett and Emily Moyer for $720,000.

Joshua Moyer on March 20, 2019, for $164,000.00. And online records for Page County, Virginia indicate that the Defendant and Barbara H. Moyer jointly owned tax map numbers 74-A-106 and 74-A-106A and they sold the parcels David Wayne Shenk, Lynette Moyer Shenk, and Samantha Lee Shenk for $122,000.00 on April 30, 2019.

48.     The GIS maps for Page County, Virginia indicate that the Transferred Parcels are contiguous and that parcel 53-A-45 surrounds the Residence. The Residence is designated by tax map number 53-A-45A.

49.     The Defendant's 2019 federal income tax return does not appear to reflect the disposition in 2019 of the various parcels of real estate in which the Defendant had an interest or the income received or attributable to the Defendant from the sale of such parcels.

50.     On January 28, 2019, articles of organization were filed for Moyer Brother Company, Inc. ("**Moyer Company**"). Moyer Company was created to take over the business of Contracting and hinder, delay, or defraud creditors of the Defendant or any trustee of the Defendant.

51.     According to the Defendant, Ms. Griffith owns Moyer Company.

52.     In or about November 2019, F&M Bank auctioned certain equipment collateral that had been owned by Defendant or Contracting. Despite the sales of collateral after December 2012, the Defendant remained liable to F&M Bank for more than $1,000,000.00 as of September 2021.

53.     The Defendant filed his 2020 federal income tax return prior to September 15, 2021, and the copy of the Defendant's 2020 federal individual return provided by the Defendant has the date, July 21, 2021, beside the preparer's signature.

54.     The Defendant disclosed "Moyer's Poultry Farm" on Form 8995 (Qualified Business Income Deduction Simplified Computation) on both his 2019 and 2020 federal income tax returns.

55.     The Schedule E attached to the Defendant's 2020 federal income tax return disclosed:

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if basis computation is required | (f) Check if any amount is not at risk |
|---|---|---|---|---|---|---|
| A | BUMPASS BIOFUELS LLC | P | ☐ | 47-2517111 | ☐ | ☐ |
| B | BIOFUELS ENERGY CONSULTANTS LLC | P | ☐ | 47-2543602 | ☐ | ☐ |
| C | VALLEY WOOD PRODUCTS INC | S | ☐ | 20-8857373 | ☐ | ☐ |
| D | MOYER BROTHERS CONTRACTING INC | S | ☐ | 20-4174690 | ☐ | ☐ |

56.     According to the Virginia State Corporation Commission's online records, the Commission automatically cancelled BioFuels on March 31, 2019, and Contracting on May 31, 2020.[3]

57.     On September 15, 2021, the Defendant filed a petition for relief under chapter 7 of the Bankruptcy Code.

***The Defendant's Oaths on His Petition, Schedules, and Statements***

58.     With his petition filed on September 15, 2021, the Defendant filed schedules and statements.  The Defendant's petition, schedules, and statements [Case No. 21-50489, Docket No. 1] are incorporated by reference.

59.     Under penalty of perjury, the Defendant signed the declaration on the petition regarding the accuracy of the information on his petition.

60.     On his petition, the Defendant:

a.     disclosed only Contracting in response to question 4;
b.     indicated at question 11 that he rents the Residence; and
c.     reported the value of his assets was "$0 - $50,000" in response to question 19.

---

[3] The Virginia State Corporation Commission automatically terminated Bumpass BioFuels LLC on March 31, 2017, and Valley Wood Products, Inc. on July 31, 2013.

61.     Contrary to the petition, as the Defendant well knew: in the 8 years prior to the petition date the Defendant had used business names other than Contracting; the Defendant was not renting the Residence; and the value of his assets exceeded $50,000.00.

62.     Under penalty of perjury, the Defendant signed the Official Form 106Dec relating to the accuracy of the information in his schedules.

63.     On Official Form 106A/B, the Defendant:

      a.     disclosed no interests in real property in response to Official Form 106A/B #1 (legal or equitable interests in real estate) or in response to Official Form 106A/B #25 (future interests);
      b.     disclosed "No" in response to Official Form 106A/B #19 (interests in non-publicly traded incorporated and unincorporated businesses); and
      c.     disclosed "No" in response to Official Form 106A/B Part 5 (legal or equitable interests in business-related property).

64.     Contrary to Official Form 106A/B, as the Defendant well knew, on the petition date the Defendant owned interests in the following undisclosed property (together with any other property revealed during discovery or proven at trial, the "**Concealed Assets**"): the Jointly Owned Parcels; the Mountain Farm Parcels; business equipment including, but not limited to, the Track Loader; and his interest in Moyer Company.

65.     On Official Form 106D the Defendant disclosed no secured creditors.

66.     On Official Form 106E/F the Defendant disclosed only the claims of the IRS (incurred, allegedly, in 2010 in connection with taxes owed by Contracting), F&M Bank, Miller, Shanks and Earl, and Synchrony Bank/Lowes.

67.     Contrary to Official Forms 106D and 106E/F, as the Defendant well knew, on the petition date the Defendant owed undisclosed debts to: CFSC, and its debt appears be secured by the Track Loader; the IRS for income taxes related to real estate sold in 2019; and, as discussed in

more detail below, $1,400,000.00 to "Valley Wood Production Inc" as disclosed on its 2018 federal income tax return.

68.     Under penalty of perjury, the Defendant signed the declaration on his Official Form 107 (the "**SOFA**") regarding the accuracy of the information on his SOFA.  The declaration on his SOFA stated as follows:

> I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
> 18 U.S.C. §§ 152, 1341, 1519, and 3571.
>
> /s/ Kevin Edward Moyer
> **Kevin Edward Moyer**                                    Signature of Debtor 2
> **Signature of Debtor 1**
>
> Date   September 15, 2021                                 Date

69.     In response to SOFA #4, the Defendant disclosed gross income of $37,000.00 for 2021 up to the petition date, $43,377.00 for 2020, and $41,535 for 2019.

70.     The Defendant answered SOFA # 5 as follows:

> 5.   Did you receive any other income during this year or the two previous calendar years?
>      Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.
>
>      List each source and the gross income from each source separately. Do not include income that you listed in line 4.
>
>      ■ No
>      ☐ Yes. Fill in the details.

| Debtor 1 Sources of income Describe below. | Gross income from each source (before deductions and exclusions) | Debtor 2 Sources of income Describe below. | Gross income (before deductions and exclusions) |
|---|---|---|---|
| | | | |

71.     The Defendant answered SOFA #18 as follows:

> 18.  Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
>      Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.
>
>      ■ No
>      ☐ Yes. Fill in the details.

| Person Who Received Transfer Address Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| | | | |

72.     The Defendant answered question 27 on Official Form 107 as follows:

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| Moyer Brothers Contracting, Inc.<br>467 Somers Rd<br>Luray, VA 22835 | Contracting business<br><br>Self | EIN:<br><br>From-To   2007 to 2019 |

73.    Contrary to the SOFA, as the Defendant well knew, his SOFA failed to: disclose all income received or attributable to the Defendant including, by way of example and not in limitation, income resulting from real estate sold in 2019; disclose the October 1, 2019, transfer of the Transferred Parcels to Gary L. Cubbage for $585,000.00 in response to SOFA #18; and check the following boxes on #27

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

and disclose the required information for "Moyer's Poultry Farm," "Valley Wood Production Inc," BioFuels, Luray Young Farmers Association, Inc., and Moyer Company.

74.    On or about November 18, 2021, the Defendant received from his tax preparer, Tax Matter Associates PC, federal and state income tax returns for 2018 for "Valley Wood Production Inc.," which return contained the following Schedule L:

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | Assets | (a) | (b) | (c) | (d) |
| 1 | Cash | | | | |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | ( ) | | ( ) | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7 | Loans to shareholders | | 1,467,450. | | 1,462,867. |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | 4,499. | | 4,499. | |
| b | Less accumulated depreciation | ( 4,499.) | 0. | ( 4,499.) | 0. |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach statement) | | | | |
| 15 | Total assets | | 1,467,450. | | 1,462,867. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach statement) | | | | |
| 19 | Loans from shareholders | | 227,800. | | 227,800. |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 1,526,077. | | 1,571,467. |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock | | | | |
| 23 | Additional paid-in capital | | 531,035. | | 531,035. |
| 24 | Retained earnings | | -817,462. | | -867,435. |
| 25 | Adjustments to shareholders' equity (attach statement) | | | | |
| 26 | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 1,467,450. | | 1,462,867. |

REV 02/22/19 PRO                                             Form **1120S** (2018)

75.     The Schedule K-1 attached to 2018 federal income tax return for "Valley Wood Production Inc" lists the Defendant as having a 100% interest in the business.

76.     The online records of the Virginia State Corporation Commission do not reflect any entity authorized to do business in Virginia as "Valley Wood Production Inc."

*The Meeting of Creditors*

77.     After the Defendant commenced this case on September 15, 2021, the United States Trustee appointed Andrew S. Goldstein ("**Mr. Goldstein**") as the Defendant's interim chapter 7. Mr. Goldstein continues to serve as the Defendant's chapter 7 trustee.

78.     The meeting of creditors in this case occurred on October 25, 2021.

79.     Pursuant to protocols adopted in response to the current pandemic, during the October 25, 2021, meeting of creditors, Mr. Goldstein verified the Defendant's identity and placed the Defendant under oath.

80.     Among other things, at his meeting of creditors the Defendant testified under oath as follows in response to questions posed by Mr. Goldstein:

a.      his current address is 467 Somers Road in Luray (which is the Residence);

a.      he reviewed his bankruptcy petition, schedules, SOFA and related documents with his counsel;

c.      he carefully reviewed the information in them before signing them;

d.      he signed the bankruptcy petition, schedules, SOFA and related documents before they were filed with the Court;

e.      he was familiar with the information in the bankruptcy petition, schedules, SOFA and related documents and the information was accurate to the best of his knowledge;

f.      when he filled his bankruptcy papers out, he listed all of his assets and all of his debts;

g.      he did not have any corrections or additions to disclose at the meeting;

h.      he had reviewed the bankruptcy information sheet and did not have any questions about it;

i.      he did not own any real estate;

j.      he was renting his residence;

k.      he was "working for a company as a supervisor;"

l.      he was not an owner in Moyer Company,

81.     At the meeting of creditors, as the Defendant well knew, he gave false testimony including, but not limited to, the statements described in paragraph: 80(e) as it relates to the accuracy of the information on those documents; 80(f); 80(g); 80(i); 80(j); and 80(l).

***Testimony and Information Relating to Contracting and Moyer Company***

82.     After the Defendant testified he was not an owner in Moyer Company the following colloquy[4] occurred:

Q.      So is that a different Moyer?

A.      The name, the name – it's still Moyer Brothers.  The company was bought out.  I no longer am a part of that company.

Q.      Now your statement of financial affairs talks about a company called [Contracting].  Is that a different company?

A.      That – yes, that was me.

Q.      Okay.  So you owned Moyers Brothers - -

A.      I owned, I owned [Contracting].

---

[4] As of the filing of this complaint, the recording of the meeting of creditors has not been transcribed by a court reporter.  Quotes in this complaint are believed to be accurate, but inconsistencies may appear between the quotes in this complaint and any transcripts later prepared as a result of, for example, differences in interpretation of words or how pauses in speaking should be interpreted in the transcription process.

Q.      Alright tell me, tell me a little bit about what happened.  Did one sell to the other I mean just give me, give me the story on that.

A.      No they're – we, we were unable to pay our bills.  We couldn't, we couldn't pay what was left.  The, the person that owns it now has, had some, they had some money – inherited some money that they, they was able to basically – they wanted to go back into the same place that I used to work and that's kind of how that come about.  Wasn't no money transferred from me to them.  There was no assets that went from me to them.  They basically held the name in order to keep working right where I was working at.  But I have no interest whatsoever in that company.

Q.      So what did [Contracting] – and, and for the record that's the one I think was your company, right?

A.      Correct.

Q.      What did [Contracting] do?

A.      What, what did they do?

Q.      Yeah.

A.      Well, we were trying to get into wood pellet and we were in the sawdust business and trying to get into wood pellets.  And we had some other people trying to go help us to get in with that.  They basically held us up on the financing to further the project and they held us out long enough to keep us from actually getting it to come together and that's when the bank came in and foreclosed and took all our property – all the collateral that we had put up and sold it.  They took all the, all the property and all the equipment.

Q.      And when did that happen?

A.      Over the last several years.  The property went in different

Mr. Slayton:    [inaudible] sent you a letter from F&M Bank regarding a public auction notice and titles.  An auction was supposed to happen September 16, 2019.  I don't know if it actually happened on that date but that has all [inaudible…]

Q.      And so Mr. Moyer what Mr. Slayton was just referring to, that was pretty much all of the assets of [Contracting]?

A.      Yes sir.

Q.      And, and you said you know you were trying to do this business and get into that business, but that company operated, at least according to your schedules, for 12 years, is that right?

A.      Correct.

Q.      But, but as of now and, and as I even since 2019, is your testimony that [Contracting] did not have any assets?

A.      No everything, everything that we had the bank liquidated.  And that's a 100% liquidated.

Q.      So, so what does [Moyer Company], your current employer do?

A.      They're, they do some contracting work for Merck Pharmaceutical. Just like a private contractor.

Q.   Just completely unrelated to what [Contracting] did, is that what you're saying?

A.   Yes.

Q.   But you work for them?

A.   Yes.

Q.   And just to reiterate your testimony from before though, they didn't, they didn't buy anything from you, you didn't transfer any assets to them, or, or anything like that is that cor – they, they basically just use, are using your name?

A.   Basically, yes.

Q.   What about not basically?  Did they give you anything at all?

A.   Well no [inaudible] – no, I didn't receive any compensation whatsoever. There was nothing - - yeah I received nothing.  Yeah, there was nothing to transfer.

*      *      *

Mr. Slayton:   Let me clarify.  I believe the new company, and Kevin you can correct me, the new company, the reason why they use the name Moyer is because the old company had had an agreement or some sort of agreement with Merck and they were able to then sort of not have to go through all the approval processes because they considered it to be similar, isn't that correct?

A.   Yes [inaudible] yeah [inaudible]

Mr. Slayton:   No money changed hands for that it was just something that the new company was able to sort of get in with Merck because of the similar name.

Q.   Is that part of the reason - -

A.   Correct

Q.   that, that they agreed to employ you in the new company?

A.   Yes.

83.   The Defendant testified in response to questioning of Mr. Goldstein that the debt owed to F&M Bank is the reason the Defendant filed the case.

84.   When counsel for the United States Trustee questioned the Defendant regarding Moyer Company, the following colloquy occurred:

Q.   The new company which is [Moyer Company], is that owned by your brother?

A.   No, uh-uh, that's - - nobody even related to me.

18

85.     When further questioned by counsel for the United States Trustee regarding Moyer

Company, the following colloquy occurred:

> Q.     What, what does [Ms. Griffith] do for the company other than allegedly buy
> your company's name?
> A.     She didn't technically buy my company's name.  She took, she started the
> new business as [Moyer Company].  I mean she kind of started that
> [inaudible] ground up.
> Q.     [Inaudible]
> Q.     Okay.  You say she started that from the ground up but, but - -
> A.     She put her money - - I'm not continuing my business.  She, she invested
> all her money for equipment and whatever she started on that business.  She
> invested her money from an inheritance into that.  I had nothing to do with
> that.
> Q.     But its operating under the contract you had with Merck?
> A.     Not necessarily the same contract.  No.  She, she was able to use Moyer
> Brothers Company and get in with the ISNetworld which you have to have
> in order to operate at Merck.  But that didn't carry nothing from me forward.
> All that done was allowed her to be accepted to receive payment from
> Merck. . . .

86.     As the Defendant well knew while he testified at his meeting of creditors, he has

an equitable interest in Moyer Company and Moyer Company was created to takeover the business

of Contracting.

87.     The Defendant attempted to obfuscate and mislead Mr. Goldstein and counsel for

the United States Trustee regarding his relationship with the nominal owner of Moyer Company.

88.     At the meeting of creditors, the Defendant knowingly and fraudulently or with

reckless disregard to the truth testified falsely as set forth in the paragraphs 80(l), 82, 84, and 85

regarding, by way of example and not in limitation, the nature of Contracting's business, his

interest in Moyer Company, and the relationship and connections between Contracting and Moyer

Company.

89.     According to ISN's website, it is "the global leader in contractor and supplier

information management" and "Hiring Clients use ISNetworld to streamline their contractor and

supplier qualification processes and drive improvement in their supply chains." Available at
https://www.isnetworld.com/en (last accessed February 1, 2022).

90.    Moyer Company may also have possession of and use certain equipment that
Contracting listed on the depreciation schedule for its 2019 federal income tax return.  By way of
example and not in limitation, the depreciation schedule attached to Contracting's 2019 return lists
a Hitachi "85UBS" placed into service on December 31, 2019.   Financing statement records
available online from the Virginia State Corporation Commission show that John Deere Financial
filed a financing statement against Moyer Company relating to a Hitachi "ZAXI ZX85-5" on
January 18, 2020.

91.    To the extent Moyer Company has possession of tangible property in which
Contracting had an interest, the Defendant's testimony at his meeting of creditors which is set forth
above regarding the lack of any assets being transferred from Contracting to Moyer Company is,
as the Defendant would have known, false.

92.    And though Moyer Company incorporated in 2019, the website for the company
appears to be https://prmarshall567.wixsite.com/my-site (last accessed January 31, 2022), and it
states:



It further lists the contact phone numbers for the company as 540-533-7861 or 540-214-9666.

93.     After an opportunity for discovery, the evidence is expected to show that Contracting used 540-533-7861 as its phone number.

***Testimony Relating to Certain Undisclosed Real Estate Interests***

94.     At the meeting of creditors, counsel for the United States Trustee asked the Defendant about the Subsequently Disclosed Parcel and the following occurred:

> Q.     And what property – it's about 5 acres – do you own off of Ida Road?
> A.     That was - - that's up on the mountain.
> Q.     Okay, well I mean you recognize you own about 5 acres up on the mountain, right?
> A.     Yes, sir?

95.     When asked why he didn't list the Subsequently Disclosed Parcel in his schedules, the Defendant knowingly and fraudulently or with reckless disregard to the truth testified, "I thought it was."

96.     When confronted with his earlier testimony to Mr. Goldstein that he did not own any real estate, the Defendant knowingly and fraudulently or with reckless disregard to the truth testified, "That is also true and I had actually forgot about that piece because we don't access it and we don't have, we don't have access to it.  And I honestly forgot about that piece of property because we don't use it.  Because we can't get to it so I hadn't really thought about it.  But I did think it was on the list. . . ."

***The Amended Schedules***

97.     Four days prior to the Defendant's meeting of creditors, the United States Trustee by an authorized agent requested from the Defendant through his counsel "complete (all schedules, statements, etc.) federal and state tax returns for the past two years for the debtor and complete (all

schedules, statements, schedules including depreciation schedules, etc.) copies of the last two federal income tax returns for Moyer Brothers Contracting, Inc."

98.    By email dated December 20, 2021, Defendant's counsel conveyed to counsel for the United States Trustee certain income tax returns and Defendant's counsel indicated that the Defendant needed to "to add some other entities to SoFA #27."

99.    On February 17, 2022, the Defendant filed: an amended Official Form 106Sum; an amended Official Form 106A/B; an Official Form 106Dec relating to the amended Official Forms 106Sum and 106A/B; and an amended SOFA.  The amended schedules and statements [Case No. 21-50489, Docket No. 10] are incorporated by reference.

100.    The amended Official Form 106Sum disclosed the total value of the Defendant's real and personal property as $32,336.00 and it disclosed the liabilities as $1,866,707.00.

101.    The amended Official Form 106Sum, as the Defendant well knew, failed to accurately disclose the value of his assets and liabilities.

102.    The amended Official Form 106A/B discloses the Defendant's interest in the Subsequently Disclosed Parcel.  That is the only difference between the Defendant's Official Form 106A/B and his amended Official Form 106A/B.

103.    Contrary to amended Official Form 106A/B, as the Defendant well knew, on the petition date the Defendant owned interests in the Concealed Assets.

104.    In response to #27, the Defendant's amended SOFA disclosed:

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

   ■ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

   ■ A member of a limited liability company (LLC) or limited liability partnership (LLP)

   ☐ A partner in a partnership

   ■ An officer, director, or managing executive of a corporation

   ☐ An owner of at least 5% of the voting or equity securities of a corporation

   ☐ No. None of the above applies. Go to Part 12.

   ■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed | |
|---|---|---|---|
| Moyer Brothers Contracting, Inc. 467 Somers Rd Luray, VA 22835 | Contracting business Tax Matters Associates | EIN: 20-4174690 From-To 1/19/2006 to 5/31/2020 | |
| Valley Wood Products Inc. 467 Somers Road Luray, VA 22835 | Wood pellets for stoves Tax Matters Associates | EIN: 20-8857373 From-To 3/22/2007 to 11/20/2019 | |

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed | |
|---|---|---|---|
| Bumpass Biofuels LLC c/o Nathan Miller, RA 560 Neff Ave., Suite 200 Harrisonburg, VA 22801 | Wood pellet business Rick Siron and Yancey, Miller, Helsley, and Bowmann CPA's PLCC | EIN: 47-2517111 From-To 12/5/14 to 3/31/2017 | |
| Biofules Energy Consultants LLC c/o Nathan Miller, RA 560 Neff Ave., Suite 200 Harrisonburg, VA 22801 | Set up to try and buy a wood pellet plant Rick Siron and Yancey, Miller, Helsley, and Bowmann CPA's PLCC | EIN: 47-2543602 From-To 12/15/2014 to 3/31/2019 | |
| Moyers Poulty Farm 467 Somers Rd Luray, VA 22835 | Hauling poultry litter Tax Matters Associates | EIN: SS# From-To 1/19/2006 to 11/20/2019 | |

105.    As the Defendant well knew, his response to #27 on his amended SOFA failed to disclose his relationship with Moyer Company and Luray Young Farmers Association, Inc.

<u>**Count I – 727(a)(2)**</u>

106.    The allegations set forth above are incorporated by reference including specifically, but not limited to, those in paragraphs 1-45, 47-48, 50-52, 57-65, 67-68, 72-73, 77-96, and 99-105.

107.    Section 727(a)(2) of the Bankruptcy Code provides that a debtor should be granted a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

108.    Courts have recognized that a "'reckless indifference to the truth' constitutes the 'functional equivalent of fraud.'" Hatton v. Spencer (In re Hatton), 204 B.R. 477, 484 (E.D.Va. 1997) (*citing* In re Johnson, 139 B.R. 163, 164 (Bankr. E.D.Va. 1992).

109.    Courts have recognized that intent to defraud may be shown through circumstantial evidence, and the commonly cited badges of fraud are:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

110.    Among other ways, concealment arises when a person creates or obtains a property interest in another person's name but has a secret interest in the property.  *See e.g. In re Gordon*, 526 B.R. 376, 385-89 (BAP 10th 2015).  In other words, "[t]he issue is whether the business at its inception is a bona fide business of the wife[]" or a ruse to defraud creditors of the husband.  *Scott v. Commissioner*, 70 T.C. 71, 85 (U.S. Tax Court 1978) (finding the stock of a company was issued to the wife as a device to defraud creditors of the husband).

111.    The badges of fraud indicate, and after an opportunity for discovery the evidence is expected to show, that the Defendant has had at all times, as he well knew, an equitable interest in

Moyer Company and from its inception the Defendant has continuously concealed his ownership interest from creditors such as F&M Bank and his chapter 7 trustee through the ruse of Ms. Griffith nominally owning the membership interests of Moyer Company.

112.     The Defendant has engaged in continuing concealment of his interest in Moyer Company with intent to hinder, delay, and/or defraud his creditors or his chapter 7 trustee.

113.     The Concealed Assets are property of the estate and the Defendant concealed them from creditors and his chapter 7 trustee with intent to hinder, delay, or defraud them.

114.     The Defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2).

### Count II – 11 U.S.C. § 727(a)(4)

115.     The allegations contained in paragraphs 1-105 and 108-113 above are incorporated by reference as though set forth fully herein.

116.     Section 727(a)(4) of the Bankruptcy Code provides that a debtor should be granted a discharge unless the debtor "knowingly and fraudulently, in or in connection with the case- (A) made a false oath or account[.]"

117.     The Defendant knowingly and fraudulently made false oaths to conceal his interests in the Concealed Assets.

118.     The Defendant knowingly and fraudulently or with reckless disregard for the truth made a false oath when he signed the declaration on the petition verifying the accuracy of the information on the petition.

119.     The Defendant knowingly and fraudulently or with reckless disregard for the truth made a false oath when he signed Official Form 106Dec verifying the accuracy of the information in his schedules and summary of schedules.

25

120.    The Defendant knowingly and fraudulently or with reckless disregard for the truth made a false oath when he signed the declaration on his SOFA verifying the accuracy of the information in the SOFA.

121.    Under oath at his meeting of creditors the Defendant, among the other false statements specifically identified above, knowingly and fraudulently or with reckless disregard to the truth testified that his petition, schedules, and SOFA filed in his case were true and correct, when in truth and fact, as the Defendant well knew, they failed to accurately disclose, by way of example and not in limitation, all property, debts, income, transfers required to be disclosed, and business interests required to be disclosed.

122.    Under oath at his meeting of creditors the Defendant, among the other false statements specifically identified above, knowingly and fraudulently or with reckless disregard to the truth testified that he had no interest in Moyer Company.

123.    The Defendant knowingly and fraudulently or with reckless disregard for the truth made a false oath when he signed Official Form 106Dec verifying the accuracy of the information in his amended schedules and amended summary of schedules.

124.    The Defendant knowingly and fraudulently or with reckless disregard for the truth made a false oath when he signed the declaration on his amended SOFA verifying the accuracy of the information in the amended SOFA.

125.    The Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

WHEREFORE, the United States Trustee, by counsel, respectfully requests this Court deny the Defendant a discharge pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4) because, among other things, he: transferred or concealed, or permitted to be transferred or concealed, property outside the year prior to his petition date and continuously concealed to the present his retention of a

beneficial or equitable interest in such property with intent to hinder, delay, or defraud his creditors

or his chapter 7 trustee; concealed property of the estate with intent to hinder, delay, or defraud

creditors or his chapter 7 trustee; and knowingly and fraudulently or with or with reckless disregard

to the truth made numerous false oaths in connection with his bankruptcy case. .

Date: February 25, 2022                          Respectfully submitted,
                                                 United States Trustee

                                                 By: /s/ W. Joel Charboneau

Certificate of Service

        I certify that on February 25, 2022, I caused the foregoing to be electronically filed in the
United States Bankruptcy Court for the Western District of Virginia which should have caused
electronic notifications of filing to be served on all registered users of the ECF system that have
appeared in this case including Marshall M. Slayton, counsel for Kevin E. Moyer in chapter 7 case
number 21-50489.

/s/ W. Joel Charboneau

W. Joel Charboneau (VSB #68025)
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
Telephone: (540) 857-2699
joel.charboneau@usdoj.gov
Trial Attorney for the United States Trustee